Case 2:15-cv-00214   Document 57   Filed in TXSD on 09/13/16   Page 1 of 12

United States District Court
Southern District of Texas
**ENTERED**
September 13, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| TEXAS STATE AQUARIUM, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL NO. 2:15-CV-214 |
| | § | |
| FISHMAN CHEMICAL OF NORTH | § | |
| CAROLINA, LLC, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

BE IT REMEMBERED that on September 13, 2016 the Court **DENIED** Plaintiff Texas State Aquarium Association D/B/A Texas State Aquarium's Motion for Summary Judgment and Motion for Default Judgment. Dkt. Nos. 49 and 56.

### I.   Background

On May 14, 2015 Plaintiff Texas State Aquarium Association D/B/A Texas State Aquarium ("TSA") filed a complaint against Defendants Fishman Chemical of North Carolina, L.L.C. ("Fishman Chemical"), David A. Fishman ("D. Fishman"), and Michael Fishman ("M. Fishman") (collectively "Defendants"). Compl., Dkt. No. 1. TSA filed its first amended complaint on May 18, 2015. First Am. Compl., Dkt. No. 4. TSA alleged that on April 8, 2015 it purchased 1 kilogram of trichlorfon, a chemical used to treat parasites in water systems, from Fishman Chemical, and subsequently received a package labeled as 1 kilogram of tricholorfon. *Id.*, ¶ 3.6. TSA alleged that after administering chemicals from this package to its 240,000-gallon seawater system, the system immediately experienced a 98% mortality rate, resulting in the almost immediate loss of 389 specimens.[1] *Id.*, ¶¶ 3.2, 3.10. TSA

---

[1] TSA notes that "[a]mong the specimens lost in this tragic event were some of TSA's most beloved and treasured creatures," including: Neville Roundbottom, a balloonfish; Hans, a sand tiger shark; four nurse sharks; Sybil, a scamp grouper; three green moray eels; and Jaws, a Warsaw grouper. First Am. Compl., Dkt. No. 4, ¶ 3.17.

further alleged that the death of these specimens resulted from Fishman Chemical's provision to TSA, in violation of the parties' contract, "a product that was not trichlorofon," but instead the highly toxic chemical hydroquinone. *Id.*, ¶ 4.4.

Defendants filed a motion to dismiss under Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6) on July 8, 2015. Dkt. No. 10. TSA responded to Defendants' motion, and included a request that the Court grant leave for TSA to file a second amended complaint to address claims against David Fishman and Michael Fishman. Dkt. No. 14. Defendants filed a reply. Dkt. No. 15. On December 11, 2015 the Court granted in part and denied in part Defendants' motion to dismiss. Dkt. No. 21. Specifically, the Court dismissed all claims against David Fishman and Michael Fishman for lack of personal jurisdiction (and so found TSA's request for leave to file a second amended complaint against these defendants moot), denied the dismissal of claims against Fishman Chemical for lack of personal jurisdiction, denied defendants' motion to dismiss for improper venue, and denied defendants' motion to transfer venue. *Id.*

On December 16, 2015, with leave of the Court, TSA filed its third amended complaint adding Defendants A-FAM, LLC d/b/a National Fish Pharmaceuticals, Asiaamerica Enterprise, Inc. d/b/a 2A Pharmachem USA ("Asiamerica"), and AA Tech Solution, Inc.. Third Am. Compl., Dkt. No. 32. In this complaint TSA alleged, among other things, a breach of contract claim against Fishman Chemical essentially identical to the contract claim raised in TSA's initial filing. *See* Dkts. No. 1 and 32. Fishman Chemical filed an answer to this complaint on December 28, 2015. Dkt. No. 28. Meanwhile, on December 22, 2015, with leave of the Court, Fishman Chemical filed a third party complaint against Asiamerica, alleging the company "is liable for all of Plaintiff's claims against Defendant [TSA]" on the basis that "the chemical it sold to Defendant," which was "subsequently sold to TSA," was "not trichlorfon as represented, but was hydroquinone." Third Party Compl., Dkt. No. 27 ¶¶ 7, 9. Asiamerica, unrepresented by counsel, responded to this complaint in letter form on April 11, 2016. *See* Dkt. No. 38. TSA filed the instant motion for default judgment against Asiamerica on September 6, 2016. Dkt. No. 56.

TSA filed the instant motion for summary judgment on its breach of contract claim against Fishman Chemical on July 22, 2016. Dkt. No. 49.[2] Fishman Chemical did not respond to TSA's motion. A party's failure to submit a timely response constitutes representation of non-opposition. S.D. Tex. Civ. R. 7.4. Still, the Court will analyze TSA's motion to determine if it is entitled to the relief that it seeks. *See Luera v. Kleberg County, Texas*, No. 11–40774, 2012 WL 490407 (5th Cir. 2012) (unpublished opinion) ("We have approached the automatic grant of a dispositive motion, such as a grant of summary judgment based solely on a litigant's failure to respond, with considerable aversion"); *see also Jaroma v. Massey*, 873 F.2d 17, 20 (1st Cir. 1989) ("[T]he district court cannot grant a motion for summary judgment merely for lack of any response by the opposing party, since the district court must review the motion and the supporting papers to determine whether they establish the absence of a genuine issue of material fact").

## II. Legal Standards
### A. Summary Judgment

"[A] court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Therefore, "[f]or summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an 'absence of a genuine issue of material fact.'" *Healix Infusion Therapy, Inc. v. Helix Health, LLC*, 737 F.Supp.2d 648 (S.D.Tex. 2010) (citing *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant." *Piazza's Seafood World, L.L.C. v. Odom*, 448 F.3d 744, 752 (5th Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

---

[2] The Court notes that TSA in fact filed two motions for summary judgment on July 22, 2016, Dkt. Nos. 48 and 49. However, since these motions appear to be identical but for the addition of a proposed order (Dkt. No. 49-10) to Dkt. No. 49, the Court will treat Dkt. No. 49 as an amended motion and consider only this document and its exhibits pursuant to TSA's instant request for summary judgment.

248 (1986)). "'[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial' and 'mandates the entry of summary judgment' for the moving party." *United States ex rel. Farmer v. City of Houston*, 523 F.3d 333, 337 (5th Cir. 2008) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

The Court must view all evidence in the light most favorable to the nonmoving party. *Piazza's Seafood World*, 448 F.3d at 752; *Lockett v. Wal-Mart Stores, Inc.*, 337 F. Supp. 2d 887, 891 (E.D. Tex. 2004). Factual controversies must be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). "When assessing whether a dispute to any material fact exists, [courts] consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

"Once the moving party has initially shown 'that there is an absence of evidence to support the non-moving party's cause,' the non-movant must come forward with 'specific facts' showing a genuine factual issue for trial." *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002) (quoting *Celotex*, 477 U.S. at 325). The Court will not, "in the absence of proof, assume that the nonmoving party could or would prove the necessary facts." *Id.* (emphasis deleted) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). Rather, the nonmovant must demonstrate specific facts identifying a genuine issue to be tried in order to avoid summary judgment. *Piazza's Seafood World*, 448 F.3d at 752; *Lockett*, 337 F. Supp. 2d at 891; *see also* Fed. R. Civ. P. 56(e). The court is not required to search the record on the nonmovant's behalf for evidence that may raise a fact issue. *Nissho-Iwai American Corp. v. Kline*, 845 F.2d 1300, 1307 (5th Cir. 1988).

### B. Default Judgment

Federal Rule of Civil Procedure 55 authorizes a court to enter a default judgment when a defendant fails to appear in an action after service of process. Fed. R. Civ. P. 55(b)(2). Local Rule 5.5 requires that motions for default judgment be served on defendants by certified mail (with return receipt requested.) Nonetheless, even with proper service, a plaintiff is not entitled to default judgment as a matter of right. *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001). Instead, the court must consider the pleadings and find sufficient basis therein. *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). A defendant in default "admits the plaintiff's well-pleaded allegations of fact." *Id.* That is, "[u]nlike questions of actual damage, which must be proved in a default situation, conduct on which liability is based may be taken as true as a consequence of the default." *J & J Sports Prods., Inc. v. Gamez*, No. 7:12-CV-333, 2013 WL 1790129, at *1 (S.D. Tex. Apr. 26, 2013) (quoting *Frame v. S–H, Inc.*, 967 F.2d 194, 205 (5th Cir. 1992) (citations omitted)).

## III. Analysis
### A. Breach of Contract Claim

According to Texas law, "'[t]he essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach.'" *Smith Intern., Inc. v. Egle Group, LLC,* 490 F.3d 380, 387 (5th Cir.2007) (quoting *Valero Mktg. & Supply Co. v. Kalama Int'l, L.L.C.,* 51 S.W.3d 345, 351 (Tex.App.-Houston [1st Dist.] 2001, no pet.)).

The parties have effectively stipulated to the first three elements of this cause of action. In its answer to TSA's third amended complaint, Fishman Chemical admits that it entered into a valid contract with TSA, for the sale of one kilogram of trichlorofon, in exchange for $272.65. Def.'s Ans. to Third Am. Compl., Dkt. 28, ¶ 4.2. It also admits that TSA fully performed its obligations under this contract, by

tendering $272.65 to Fishman Chemical. *Id.*, ¶ 4.3. Finally, Fishman Chemical admits that the product it provided TSA "was not trichlorofon," the chemical that, by Fishman Chemical's own admission, it was obligated to deliver under its contract with TSA. *Id.*, ¶¶ 4.2, 4.4. Thus, the only element of TSA's breach of contract claim left in issue is whether TSA sustained damages as a result of Fishman Chemical's breach.

In its motion for summary judgment, TSA claims it suffered $996,997.00 in "direct economic losses" as a result of Fishman Chemical's breach of contract. Dkt. No. 49 at 8. It identifies these losses as the sum of "fish loss expenses" totaling $156,402.00 and "attendance revenue loss" totaling $840,595.00." *Id.* For the reasons explained below, the Court finds that material questions of fact exist as to the existence and amount of these damages sufficient to preclude summary judgment in TSA's favor on its breach of contract claim.

Damages for breach of contract under Texas law

As a preliminary matter, the Court notes that TSA's instant motion for summary judgment appears to assume that Texas law governs the contract at issue in this case. *See* Dkt. No. 49. As Fishman Chemical has not raised any contrary arguments, this Court will apply Texas law in analyzing TSA's breach of contract claim. *See Weber v. PACT XPP Technologies, AG*, 811 F.3d 758, 771 (5th Cir. 2016) ("Courts may be justified in pretermitting th[e] [choice-of-law] analysis when neither party contends that any distinctive feature of the relevant substantive law decides the dispute."); *see also Murthy v. Abbott Laboratories*, 847 F.Supp.2d 958, 966-67 (S.D.Tex. 2012). Additionally, TSA has not made any argument to the Court regarding whether its contract with Fishman Chemical is governed by the common law or the Texas Uniform Commercial Code ("UCC"). The answer may be obvious, but since in Texas "[t]he law of contract, whether under the common law or the Uniform Commercial Code, generally authorizes damages for breach in the amount of the expectancy interest of the wronged party," the Court refrains from addressing this issue here. *Reynolds Metals Co. v. Westinghouse Elec. Corp.*, 758 F.2d 1073, 1079 (5th Cir. 1985).

In Texas, "contract damages are defined by the plaintiff's actual loss." *CQ, Inc. v. TXU Mining Co.*, 565 F.3d 268, 278 (5th Cir. 2009) (citing to *Abraxas Petrol. Corp. v. Hornburg*, 20 S.W.3d 741, 760 (Tex.App.–El Paso 2000)). This means that "[a] nonbreaching party is generally entitled to all actual damages necessary to put it in the same economic position in which it would have been had the contract not been breached." *Id.* Contract damages therefore generally include the benefits expected under a contract, plus any losses caused by a breach of contract, minus the costs saved by the injured party as a result of breach. *See, e.g., Abraxas Petrol. Corp.*, 20 S.W.3d at 760 ("To restore an injured party to the position he would have been in had the contract been performed, it must be determined what additions to the injured party's wealth have been prevented by the breach and what subtractions from his wealth have been caused by it.")

### TSA's claimed "fish loss expenses"

In support of its claim for $156,402.00 in "fish loss expenses" damages, TSA cites to the affidavit of Jesse Gilbert, identified as TSA's Vice-President and Chief Operating Officer. Dkt. No. 49, Ex. 1 ¶ 3. In his affidavit, Gilbert states that "[t]he total direct expenses suffered by TSA as a result of the fish loss made [sic] the basis of this suit is $156,402.00." *Id.* This affidavit refers to a "true and correct copy of [Gilbert's] report dated May 6, 2016" summarizing TSA's "fish loss expenses," attached to the affidavit as "Exhibit 1." *Id.* Yet no such report is attached to the affidavit. Instead, "Exhibit 1" appears to consist of two undated spreadsheets, titled "Attendance Information" and "Revenue Information," respectively. Dkt. No. 49, Ex. 1-1. These spreadsheets do not mention fish loss at all, nor refer to the figure $156,402.00. *Id.* TSA has failed to provide the Court with any ascertainable evidence supporting its claim for $156,402.00 in "fish loss expenses." Furthermore, Gilbert has not explained whether the amount accounts only for the replacement cost of the fish, or if it also includes expenses TSA incurred as a result of this loss (e.g. relating to clean-up and disposal, forensic and chemical tests conducted, etc.)

Again, "[i]n Texas, 'the general rule for measuring damages for the breach of a contract is just compensation for the loss or damage actually sustained." *BCC Merchant Solutions, Inc. v. Jet Pay, LLC*, 129 F.Supp.3d 400, 473 (N.D. Tex. 2015) (citing *Phillips v. Phillips*, 820 S.W.2d 785, 788 (Tex.1991)). TSA's motion for summary judgment simply does not cite to any evidence in the record supporting its claim that it incurred "fish loss expenses," as opposed to fish loss in general, let alone in the amount of $156,402.00.

TSA's claimed "attendance revenue loss"

In support of its claim for "$840,595.00" in "attendance revenue loss" damages, TSA cites to the affidavit of Julio Flores, Jr., identified as TSA's Vice-President of Finance and Administration and Chief Financial Officer. Dkt. No. 49, Ex. 3 ¶ 2. In his affidavit, Flores states that "[a]s a direct result of TSA's fish loss, TSA suffered a net revenue attendance loss of $840,595.00." Dkt. No. 49, Ex. 3 ¶ 3. His affidavit refers to a "first supplemental report dated July 6, 2016, summarizing the net revenue attendance loss TSA suffered as a result of the fish loss," attached to the affidavit as "Exhibit 1." *Id.* It is unclear whether the documents actually attached, a series of spreadsheets, are those Flores references, as none are dated July 6, 2016. Dkt. No. 49, Ex. 3-1. The documents do appear to represent calculations relating to "attendance loss" and "net revenue loss," and specifically reference a total "net revenue loss" of $840,595.00 *Id.* Yet nothing attached to Flores's affidavit sufficiently explains the significance of these figures. *Id.* For instance, while the document attached to the affidavit labeled "Attendance Information" appears to compare mean summer attendance figures at TSA from 2012-2013 with actual attendance in the summer of 2015, presumably as a way to calculate lost attendance attributable to "fish loss," no narrative within the documents confirms this. *Id.* Additionally, this document and another labeled "Revenue Information" are both undated. *Id.* Meanwhile, the remainder of the documents attached to Flores's affidavit, which seem to be TSA financial statements documenting revenue and operating expenses from the summer of 2012, appear in the record without any explanation whatsoever. *Id.*

Even reading these documents in the most forgiving light would fail to satisfy the Court that no dispute of material fact exists as to the "attendance revenue loss" damages TSA claims. Although TSA does not identify them as such, it seems these damages are meant to be a measure of TSA's lost profits. Under Texas law, lost profits damages are recoverable to redress a breach of contract so long as a party supports its projection of lost profits with "proven facts." *Terrell v. Household Goods Carriers' Bureau*, 494 F.2d 16, n. 12 (5th Cir. 1974); *see also Great Pines Water Co.*, 203 F.3d at 922 ("Opinions of estimated lost profits must, at a minimum, be based on objective facts, figures, or data from which the amount of lost profits can be ascertained."). The test for the sufficiency of lost profits estimates is "reasonable certainty." *Burkhart Grob Luft Und Raumfahrt GmbH & Co. KG v. E-Sys., Inc.*, 257 F.3d 461, 467 (5th Cir. 2001) (citing to *Tex. Instruments, Inc. v. Teletron Energy Mgmt., Inc.*, 877 S.W.2d 276, 279-80 (Tex. 1994)). That is, "[w]hile recovery of lost profits does not require that the loss be susceptible to exact calculation, the amount of the loss must be shown by competent evidence with reasonable certainty." *Great Pines Water Co., Inc. v. Liqui-Box Corporation*, 203 F.3d 920, 922 (5th Cir. 2000); *see also Atlas Copco Tools v. Air Power Tool & Hoist*, 131 S.W.3d 203, 209 (Tex.App.–Fort Worth 2004).

As an initial matter, TSA claims the wrong measure of damages with respect to any change in attendance it experienced in 2015. While TSA's motion for summary judgment includes references to "revenue loss," a proper measure of damages looks to lost net profits, not lost net revenues. *Turner v. PV Int'l*, 765 S.W.2d 455, 465 (Tex.App.–Dallas 1988, pet. denied) ("The measure of damages for loss of profits as consequential damages… is net profits.") "'Net profits' are defined as 'what remains in the conduct of business after deducting from its total receipts all of the expenses incurred in carrying on the business.'" *Id.* TSA's motion does not address how its operating expenses or other costs relate, if at all, to the "net revenue" figures it cites to the Court. Its claim for $840,595.00 in "attendance revenue loss" damages is therefore improper, in that it does not identify a measure of lost profits, as Texas law requires.

Even if the Court could overlook this flaw, the information TSA presents to support its claim for $840,595.00 does not constitute "competent evidence" showing the amount of TSA's lost profits with "reasonable certainty." As noted, while TSA has attached some figures and data to its motion, they are presented only summarily, without context or justification. TSA does not explain to the Court, for instance, why it chose the data sets it presents, or what their significance is relative to its claim for $840,595.00 in "attendance revenue loss" damages. Specific information about TSA's methodology seems especially pertinent given that TSA has, presumably accidentally, filed two separate estimates of its "attendance revenue loss" damages with the Court. Its estimate of $840,595.00, attached to the Flores affidavit, compares 2015 summer attendance figures at the aquarium with average summer attendance from 2012-2015. Dkt. No. 49, Ex. 3-1. Its estimate of $642,706.00, which appears attached to the Gilbert affidavit, compares 2015 summer attendance figures with average summer attendance from 2013-2015. Dkt. No. 49, Ex. 1-1. Clearly, no matter what methodology TSA employs, the interval of years it selects to calculate its average summer attendance against 2015 summer attendance will affect the measure of damages it claims. At a minimum, however, TSA must justify its methodological choices, especially since it appears to have tested at least two different models for calculating "attendance revenue loss" damages, which vary in their estimate of these damages by nearly $200,000.00.

Importantly, "[u]nder Texas law, damages are one of the essential elements of a breach of contract action." *Versata Software, Inc. v. Internet Brands, Inc.*, No. 2:08–cv–313–WCB, 2012 WL 3075167 at *2 (E.D.Tex. 2012) (unpublished opinion). Accordingly, "[a] breach of contract plaintiff who seeks nothing beyond economic damages cannot receive a judgment based on breach alone." *Intercontinental Group Partnership v. KB Home Lone Star L.P.* 295 S.W.3d 650, 660 (Tex. 2009) Indeed, the rule in Texas is that even "nominal damages are not available when the harm is entirely economic and subject to proof." *MBM Financial Corp. v. Woodlands Operating Co., L.P.*, 292 S.W.3d 660, 665 (Tex. 2009).

For this reason, and based on the foregoing discussion of the insufficiency of TSA's evidence supporting the $996,997.00 in "direct economic losses" it seeks from Fishman Chemical, the Court **DENIES** TSA's Motion for Summary Judgment.

### B. Default Judgment claim

In its Motion for Default Judgment, TSA states that pursuant to Federal Rule of Civil Procedure 12, Asiamerica was required to file a responsive pleading or otherwise defend the action against it. Dkt. No. 56 at 2. Asiamerica did file a response to TSA's third amended complaint adding Asiamerica as a defendant, but in letter format and unrepresented by counsel. *See* Dkt. No. 38. TSA's motion for default argues that because this communication was not an "appropriate federal court answer" and because Asiamerica has not appeared before the Court with licensed counsel, Asiamerica has "failed to properly appear." Dkt. No. 56 at 2. TSA further states that Asiamerica is "not in the military service." Dkt. No. 56 at 3. TSA therefore requests a default judgment against Asiamerica under Federal Rule of Civil Procedure 55(a). *Id.* TSA's motion alleges it is entitled to relief against Asiamerica because Asiamerica "manufactured, designed, tested, and/or distributed" a chemical distributed to Fishman Chemical, which then became the "producing and proximate cause of the death of fish and mammals owned and cared by [sic] TSA." Dkt. No. 56 at 3. TSA requests that the Court enter default judgment against Asiamerica awarding economic damages and attorney fees totaling $1,080,784.50, plus court costs and interest. Dkt. No. 56 at 4. TSA also requests the opportunity to present evidence in support of its request for damages to the Court. Dkt. No. 56 at 3.

TSA filed its motion for default judgment on September 6, 2016, fully two weeks after the deadline for filing dispositive motions in this action passed. *See* Dkt. No. 56. Additionally, in violation of Local Rule 5.5, TSA failed to serve notice of its motion for default judgment on Asiamerica by certified mail. *See* Dkt. No. 56 at 5. For these reasons, the Court declines to consider the merits of TSA's motion for default judgment and instead **STRIKES** the motion.

## IV. Conclusion

Based on the foregoing, the Court:

- **DENIES** TSA's Motion for Summary Judgment, Dkt. No. 49; and
- **STRIKES** TSA's Motion for Default Judgment, Dkt. No. 56.

The Court previously requested that the parties meet and confer, addressing, if appropriate, whether the final pretrial conference set for 2:00pm on September 22, 2016 should proceed as scheduled. Dkt. No. 53. Because the Court does not find good cause to reschedule the conference, it reminds the parties that this final pretrial conference remains scheduled for 2:00pm on September 22, 2016. At this time, the Court will be prepared to consider evidence addressing TSA's claims for damages, as TSA has requested. *See* Dkt. No. 56 at 3. The Court will also entertain arguments from any party addressing whether, for good cause, it should extend its lapsed deadline for filing dispositive motions, or otherwise amend its scheduling orders in this action.

SIGNED this 13th day of September, 2016.

_____
Hilda Tagle
Senior United States District Judge